# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ROBERT CHOI,      )
           )
    Plaintiff,     )
           )
  v.         )  No.  21 C 1895
           )
KONDAUR CAPITAL CORPORATION, AS )  Judge Rebecca R. Pallmeyer
SEPARATE TRUSTEE OF MATAWIN   )
VENTURES TRUST SERIES 2013-3   )
           )
    Defendant.   )

## MEMORANDUM OPINION AND ORDER

In this lawsuit, Plaintiff Robert Choi ("Choi") brings claims relating to Defendant Kondaur Capital Corporation's ("Kondaur") servicing of his mortgage loan.  These parties have already spent almost six years in litigation in Illinois state court, where almost all of Choi's claims were dismissed with prejudice.  The state court did allow one of Choi's claims to proceed:  that Kondaur did not respond to Choi's loss mitigation application within the time required by a provision in a regulation referred to as "Regulation X," 12 C.F.R. § 1024.41.  The court set that claim for trial, but Choi voluntarily dismissed his single remaining claim on the eve of trial.  A year later, Choi refiled suit against Kondaur in state court.  As Choi's claims arise under federal law, Kondaur removed the case to this court.

Choi's two-count complaint against Kondaur is focused on its alleged violations of § 1024.41, which Choi believes gives rise to a claim under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), Pub. L. No. 111-203, 124 Stat. 1376, and the Consumer Financial Protection Bureau ("CFPB") (Count I); as well as the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* (Count II).   RESPA imposes duties on lenders and servicers of federally related mortgages, and creates a private right of action for violations.  12 U.S.C. § 2605(f).  In 2010, the Dodd-Frank Act created the CFPB and granted the agency authority to implement and enforce various consumer protection statutes, including

RESPA; Dodd-Frank also amended RESPA to impose additional restrictions on mortgage servicers. *See* Dodd-Frank, §§ 1011–1100H, 1463. The CFPB then amended Regulation X, 12 C.F.R. § 1024 *et seq.*, which implements RESPA, to reflect these changes. *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act, 78 Fed. Reg. 10,696, 10,702–03 (Jan. 10, 2014). Section 1024.41 of Regulation X concerns loss mitigation procedures, and expressly provides that borrowers may enforce violations through RESPA's right of action.[1] 12 C.F.R § 1024.41(a).

Kondaur now moves to dismiss the complaint in its entirety. As explained here, the motion [4] is granted.

## BACKGROUND

At this stage, the court considers only "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Court filings not subject to reasonable dispute may be judicially noticed, so the court considers the state court filings attached to the complaint and the parties' briefing. *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017). When considering Plaintiff Choi's complaint, the court draws all reasonable inferences in his favor and accepts as true all well-pleaded facts. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). This presumption of truth does not, however, extend to the complaint's numerous legal conclusions. *Id.*

## I. Factual Background

The court summarizes only the relevant facts. In 2000, Robert Choi and his wife Olga F. Chtiguel (collectively, the "Chois") purchased a single-family house in Ingleside, Illinois for $113,000.000. (Compl., Ex. 1 to Def.'s Notice of Removal [1-1] (hereinafter "Compl."), at ¶¶ 13–14.) In 2003, the Chois refinanced their mortgage loan into a "federally related" Department of

---

[1]     The court refers to the version of § 1024.41 effective from January 10, 2014 to October 18, 2017.

Housing and Urban Development ("HUD") and Federal Housing Administration ("FHA") loan with National City Bank. (*Id.* ¶ 14.) Then, in 2009, PNC Bank ("PNC") purchased National City and transferred the Chois' loan to PNC. (*Id.* ¶ 15.) Meanwhile, in the aftermath of the 2008 financial crisis, the Chois' business (a sewing manufacturing company) fell on hard times. (*Id.* ¶¶ 13, 19.) By April 2012, the Chois had "exhausted their savings," and were not "able to pay their mortgage." (*Id.* ¶ 19.) Although Plaintiff is not explicit about this, it appears the Chois defaulted on their mortgage; on September 19, 2012, PNC filed a foreclosure complaint in the Circuit Court of Lake County, Illinois, Case No. 2012 CH 4742, alleging an outstanding $60,910.70 loan balance. (*Id.* ¶¶ 19, 49.) *See* https://circuitclerk.lakecountyil.gov/publicAccess (last visited March 15, 2022).

At an unspecified time, Choi contacted a HUD-certified Consumer Credit Counseling Services ("CCCS") agency in Woodstock, Illinois, to assist him in communicating with PNC about a potential loan modification. (*Id.* ¶ 19.) Choi submitted multiple loan modification applications through the CCCS agency, which PNC repeatedly rejected. (*Id.* ¶ 22.)[2] Then, on October 30, 2013, PNC "sold the loan" and was no longer the "legal holder of the loan." (*Id.*) The details on this loan sale are fuzzy. On December 8, 2013, Plaintiff alleges, PNC received $73,663.94 from HUD "for the loan," and on February 14, 2014, the "loan was transferred to Kondaur." (*Id.* ¶¶ 22–23.) The complaint does not clarify who transferred the loan, or who held the loan from October to February.

Choi apparently believed that PNC continued to hold the loan during this time; on January 2, 2014, he submitted another completed loan modification application to PNC, which PNC again declined. (*Id.* ¶ 22.) At some point, Choi learned Kondaur owned the loan; around March 4, 2014, the Woodstock CCCS agency contacted Kondaur on Choi's behalf, and asked Kondaur to continue reviewing the January 2014 application that Choi had submitted to PNC. (*Id.* ¶ 24; Ex.

---

[2]      The complaint refers to "loan modification" and "loss mitigation" applications; these appear interchangeable. Loss mitigation refers to various strategies, including loan modification, to help borrowers in default retain their homes. *See* https://www.hud.gov/hudprograms/loss_mitigation (last visited March 15, 2022).

A to Compl. [1-1] at 41.)  Kondaur told CCCS that before it would proceed with a modification, the borrower would be required to make a "down payment" in order "to bring the loan to a more current standing."  (Ex. A to Compl. at 41.)  Shortly thereafter, on March 6, the CCCS agency "stepped aside from dealings with Kondaur" as a result, Plaintiff asserts, of concerns "about Kondaur's illegal payment demands for modification review."  (Compl. ¶ 25.)

On March 24, 2014, Choi himself submitted a loan modification application to Kondaur, using Kondaur's preprinted forms.  (*Id.* ¶ 26.)  Kondaur did not acknowledge receipt of the application.  (*Id.*)  Believing this to be a violation of a federal regulation, Choi contacted the Illinois Attorney General's Office, relaying his concerns about Kondaur's "conduct and down payment demands."  (*Id.* ¶ 27.)  Plaintiff alleges that the AG's Office then contacted Kondaur, and on April 22, 2014, Kondaur's legal counsel informed the Office that Choi's application was "under review," pending receipt of Choi's 2013 Profit and Loss Statement (necessary to complete the application).  (*Id.*; *see* Ex. B to Compl. [1-1] at 42–43.)  In an April 24, 2014 letter to Choi, Kondaur requested that Statement and additional documents.  (Ex. C to Compl. [1-1] at 44–45.)  Also on April 24, Choi had a telephone call with Kondaur's "representative Umetsu" (there are no further allegations about Umetsu) regarding what additional documents Choi "could provide" and "what requested documents were not eligible."  (Compl. ¶ 27.)  On April 29, Choi submitted "the additional requested information and the 2013 P&L."  (*Id.*)  After this date, Kondaur did not request any other documents, meaning, Choi alleges, that the application was "complete."  (*Id.* ¶ 28.)  Kondaur never responded to this application, however, and instead continued the foreclosure action.  (*Id.* ¶¶ 29–31.)

During this time, Kondaur continued to service the loan "by issuing and mailing monthly mortgage statements in attempt to collect money; by inquiring about home insurance and property taxes payments; [and] by issuing and mailing multiple Payoff Demands."  (*Id.* ¶ 35.)  Kondaur's conduct included, according to the complaint, using "unconscionable means to distress Choi with money extortion, incorrect monthly mortgage statements, multiple different payoff demands and

4

foreclosure." (*Id.* ¶ 40.) Without offering specifics about the allegedly inaccurate statements and demands, Plaintiff asserts that Kondaur's methods were intended to "frustrate[ ] and distress[ ] Choi," so "he would either give into Kondaur's inflated payoff demands or give up the house in foreclosure." (*Id.* ¶ 37.) Choi alleges that he sent numerous letters and made numerous calls to Kondaur requesting information about the application status and servicing of the loan. (*Id.* ¶ 33.) Plaintiff alleges, further, that "[h]ad Choi not relied on Kondaur's promises to fairly evaluate the application," Choi could have "opted for" other options of saving the house and ending foreclosure. (*Id.* ¶¶ 37, 44.)

After servicing the loan for almost one and a half years, Kondaur transferred the loan to Wilmington Savings Fund ("Wilmington") on July 14, 2015. (*Id.* ¶ 34.) At some point (the complaint does not make clear), Choi submitted a new application to Wilmington, again assisted by the CCCS agency, and spent a year in the "loss mitigation process." (*Id.* ¶¶ 34, 38.) Wilmington eventually offered a modified loan, which Choi accepted. (*Id.* ¶ 38.) On August 30, 2016, Wilmington "dismissed the foreclosure case and modified the loan." (*Id.* ¶ 34.) According to Plaintiff, the modified loan was "inflated" by $19,936.74 of "added fees" resulting from Kondaur's "delays" and "violations." (*Id.* ¶¶ 38, 70.) Additionally, under the modified loan, Choi will pay about $236,640.00 to Wilmington in what he characterizes (without explanation) as "repayments," as compared to the $60,910.73 loan balance in April 2012, when Choi defaulted. (*Id.* ¶¶ 38, 70.)

In addition to the inflated loan balance, Chois was harmed, he alleges, by "Kondaur's legal ploys and deceptions [in the state court action that] have caused this case to expand since 2014 over 7 years." (*Id.* ¶ 39.) Kondaur's counsel allegedly opposed health accommodations for Choi, despite knowing he was diagnosed with a "life threatening illness." (*Id.* ¶ 43.) These abusive actions, "coupled with fear over ongoing foreclosure, and [the] unknown status of the application, eventually resulted in emotional distress and health related problems," including back injury, increased blood pressure and cholesterol, and mood-related disorders. (*Id.* ¶¶ 41–42.)

## II.     Procedural Posture

As noted, PNC filed a foreclosure complaint in the Circuit Court of Lake County on September 19, 2012.  (Compl. ¶ 49.)  On May 6, 2014, after PNC had sold the loan to Kondaur, the Chois filed a Counterclaim against PNC (Plaintiff does not identify the claims asserted in that Counterclaim).  (*Id.*)  Also in May 2014, Kondaur substituted for PNC as plaintiff in the foreclosure action, but did not promptly respond to the Counterclaim.  After Kondaur sold the loan to Wilmington in July 2015, Wilmington was substituted as plaintiff and, a year later, as noted above, dismissed the foreclosure complaint.  (*Id.*  ¶¶ 49–50.)

But the litigation continued; the Chois filed a First Amended Counterclaim against PNC in October 2016.  A month later, they filed a "Third Amended Counterclaim" against Kondaur, alleging fifteen counts under Illinois common law and state and federal statutes.[3]  (Third Am. Counterclaim, Ex. 1 to Def.'s Mot. to Dismiss [5-1] (hereinafter "Am. Counterclaim").)  In Count VI ("violations of Dodd-Frank Act and CFPB") and Count VII ("violations of [RESPA]") of this pleading, the Chois alleged that Kondaur violated various CFPB regulations, including (but not limited to) Regulation X.  (Am. Counterclaim ¶¶ 236–367.)  Kondaur moved to dismiss, and in February 2018 the court largely granted that motion, dismissing all claims with prejudice, except for one contained in Counts VI and VII.  (Compl. ¶ 51.)  Specifically, the state court ruled that "Kondaur's Motion is denied solely with respect to the allegations(s) that Kondaur failed to respond to Plaintiffs' loss mitigation application within the time required by 12 C.F.R. § 1024.41 [of Regulation X]," but "[i]n all other respects, [Counts VI and VII are] dismissed with prejudice." (Dismissal Order, Ex. E to Compl. [1-1] (hereinafter "Dismissal Order"), at 50–56.)  As part of this decision, the court specifically dismissed with prejudice claims that Kondaur violated other CFPB regulations and § 1024.41's non-timing provisions.  (*Id.* at 52–54.)

---

[3]     The pleading itself is labeled "First Amended Counterclaim against Kondaur," or "in alternative Third Amended Counterclaim."  Choi characterizes this pleading as the First Amended Counterclaim, while Kondaur characterizes it as the Third Amended Counterclaim.  The court has done its best to present the procedural posture as accurately as possible.

The state court dismissed all claims brought by Choi's wife, but the case was set to proceed to trial on March 2, 2020 on Choi's § 1024.41 timing claim against Kondaur. (Compl. ¶ 54.) But on February 14, 2020—after almost six years of litigating counterclaims against Kondaur and two weeks before the scheduled trial—Choi moved for voluntary dismissal. (Voluntary Dismissal, Ex. A to Pl.'s Resp. [12-1] (hereinafter "Voluntary Dismissal"), at 1.) Choi alleges he made this decision for "health reasons" and "to focus on his health." (Compl. ¶ 54.) Choi sought a without-prejudice dismissal pursuant to 735 ILCS 5/2-1009 (which permits a plaintiff to voluntarily dismiss his action without prejudice any time before trial), and with leave to refile within one year pursuant to 735 ILCS 5/13-217.[4] (Voluntary Dismissal at 1.) On February 20, the court entered an agreed order, dismissing the case without prejudice and ordering Choi to pay costs before refiling. (*Id.* at 3.)

On March 12, 2020, the Chois filed a notice of appeal of several decisions in the foreclosure action, including Kondaur's motion to dismiss. (Notice of Appeal, Ex. 3 to Def.'s Mot. [5-3] at 4.) On June 17, 2021, the Illinois Appellate Court, Second District, affirmed the trial court's orders. *See Wilmington Savings Fund Soc., FSB v. Choi*, 2021 IL App (2d) 200218-U, ¶ 2, 2021 WL 2477043, *1; (Appellate Mandate, Ex. 1 to Def.'s Supp. [16-1] at 2.) The appellate court held that the Chois forfeited most issues on appeal (including any challenge to dismissal of the RESPA or Dodd-Frank claims); for issues adequately briefed, the appellate court affirmed the trial court's ruling on the merits. *Wilmington*, 2021 IL App (2d) 200218-U, ¶¶ 38–86. On February 18, 2021, Choi filed a new action in the Circuit Court of Lake County. (Compl. at 5.) The factual allegations of this complaint are substantively identical to the allegations in his amended counterclaim against Kondaur in the foreclosure action. Choi has narrowed his claims, however: he alleges only violations of "Dodd-Frank Act and CFPB" (Count I in the refiled action, Count VI in the original

---

[4] Section 13-217 was amended by Public Act 89-7, § 15 (eff. Mar. 9, 1995), which the Illinois Supreme Court struck down in its entirety. The cited language comes from the pre-1995 version (the statute currently in effect). *See* 735 ILCS 5/13-217 (West 1994); *Rocha v. Rudd*, 826 F.3d 905, 910 n.1 (7th Cir. 2016).

action) and RESPA (Count II in the refiled action, Count VII in the original action).  Choi also narrowed his refiled counts to focus on Kondaur's alleged violation of § 1024.41.  On April 9, 2021, Kondaur removed the case to federal court [1], on the basis of federal question jurisdiction.  *See* 28 U.S.C. §§ 1441(a), 1331.  Shortly thereafter, Kondaur moved to dismiss [4] under Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead sufficient factual allegations to state a plausible claim to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The defendant bears the burden of establishing affirmative defenses, including res judicata and the statute of limitations; such a defense is grounds for dismissal under Rule 12(b)(6) only where the plaintiff has pleaded himself out of court.  *See Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020); *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014).

### I.     Preclusion

Kondaur first argues that Choi's claims are barred, at least in part, by res judicata (or claim preclusion) and collateral estoppel (or issue preclusion), based on the prior foreclosure action in Illinois court.  This court applies Illinois's preclusion rules, as the Full Faith and Credit Act, 28 U.S.C. § 1738, "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Walczak v. Chi. Bd. of Educ.*, 739 F.3d 1013, 1016 (7th Cir. 2014) (quoting *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982)).  Res judicata bars subsequent actions between the same parties regarding the same claim; this bar extends to any matter that could have been decided in the first action, not just those matters actually decided.  *Ward v. Decatur Mem'l Hosp.*, 2019 IL 123937, ¶ 44, 160 N.E.3d 1, 8–9.  The res judicata defense requires three showings:  (1) a final judgment on the merits; (2) identify of cause of action; and (3) identity of parties or their privities.  *Id.* ¶ 45, 160 N.E.3d at 9.  Issue preclusion, or collateral estoppel, is a narrower doctrine: it only bars relitigation of issues actually litigated and determined in the prior action.  *Vill. of Alsip*

*v. Portincaso*, 2017 IL App (1st) 153167, ¶ 27, 78 N.E.3d 611, 619–20.  Issue preclusion bars relitigation of an issue where (1) there is a final judgment on the merits; (2) addressing an identical issue; and (3) the party against whom estoppel is asserted was a party (or in privity with a party) in the prior proceeding.  *Nowak v. St. Rita High Sch.*, 197 Ill. 2d 381, 390, 757 N.E.2d 471, 477 (2001).

The broader doctrine of res judicata controls here.  That the parties to this case and the state court case are identical is undisputed.  The requirement of an identical cause of action is also satisfied:  under Illinois's transactional test, separate claims are considered the same cause of action for res judicata purposes "if they arise from a single group of operative facts, regardless of whether they assert different theories of relief."  *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311, 703 N.E.2d 883, 893 (1998).  The foreclosure action and Choi's counterclaims, and the instant case, both arise from Kondaur's servicing of the mortgage, including the loan modification application.  Thus, although the parties' explanations are not models of clarity, the court concludes that the dispositive question here is whether there was a final judgment on the merits.  In the foreclosure action, the state court dismissed with prejudice thirteen counts in Choi's Third Amended Counterclaim.  For Count VI (Dodd-Frank/CFPB) and Count VII (RESPA), both of which alleged violations of CFPB regulations, the court denied Kondaur's motion to dismiss "solely with respect to the allegations(s) that Kondaur failed to respond to Plaintiffs' loss mitigation application within the time required by 12 C.F.R. § 1024.41." (Dismissal Order at 52–53.)   The court otherwise dismissed Counts VI and VII with prejudice.  (*Id.*)  Then, as noted, Choi voluntarily dismissed his case on the eve of trial.

Ordinarily, neither the denial of a motion to dismiss or voluntary dismissal results in a final judgment on the merits.  *See Toushin v. Ruggiero*, 2021 IL App (1st) 192171, ¶ 77, ___ N.E.3d ___; *Watkins v. Ingalls Mem'l Hosp.*, 2018 IL App (1st) 163275, ¶ 70 n.4, 105 N.E.3d 789, 805 n.4.  But under Illinois's prohibition on claim splitting (a matter not expressly discussed by the parties), "a plaintiff who splits his claims by voluntarily dismissing and refiling part of an action after a final

judgment has been entered on another part of the case subjects himself to a *res judicata* defense." *Hudson v. City of Chicago*, 228 Ill. 2d 462, 473, 889 N.E.2d 210, 217 (2008) (res judicata barred plaintiffs' refiled "willful and wanton" count, where the court had previously dismissed their negligence count); *see also Walczak*, 739 F.3d at 1016–20 (applying Illinois's claim-splitting doctrine to hold plaintiff's suit precluded). An order dismissing part of the litigation is final if it "disposes of the rights of the parties" on "a separate branch" of the entire controversy. *Wilson v. Edward Hosp.*, 2012 IL 112898, ¶ 19, 981 N.E.2d 971, 978.

The claim-splitting doctrine is directly relevant here: after the state court dismissed most of Choi's claims with prejudice, he voluntarily dismissed his case. There are some exceptions to the doctrine, however; the rule against claim-splitting may be "relaxed where there has been an omission due to ignorance, mistake or fraud, or where it would be inequitable to apply." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 341, 665 N.E.2d 1199, 1207 (1996). More specifically, the Illinois Supreme Court has identified the following exceptions:

> (1) the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action; (3) the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason.

*Id.* (citing Restatement (Second) of Judgments § 26(1) (1980)). Choi did not argue for recognition of any exception, meaning his entire action would normally be barred by res judicata.

But several factors counsel against dismissal for this reason. In its opening brief, Kondaur itself contended that Choi's claims are barred only "in part," and that the "only claim remaining" is the § 1024.41 allegation relating to its untimely application response; then, despite this language, Kondaur requested dismissal of the entire complaint. (Def.'s Mem. at 4–7.) In response, Choi claimed that Kondaur had conceded that its preclusion arguments "are limited to those matters" dismissed by the state court, and that therefore res judicata did not preclude his entire suit. (Pl.'s

Resp. [12] at 5–6.)  Only on reply did Kondaur clarify its argument, and urge that res judicata bars any claim that could have been decided in the first action.  (Def.'s Reply [15] at 7.)  Neither party directly addressed claim-splitting, though Kondaur cited to several cases discussing the doctrine.

The court recognizes the possibility of at least one exception to application of the claim-splitting doctrine here.  Specifically, the doctrine will not bar further litigation where the first court has expressly reserved the right to a second action; such a reservation must be "clearly and unmistakably communicated or directly stated."  *Law Offs. of Nye & Assocs., Ltd. v. Boado*, 2012 IL App (2d) 110804, ¶ 21, 970 N.E.2d 1213, 1218.  Illinois courts hold that the use of "without prejudice" language is not sufficiently clear and unmistakable to trigger the exception, but dismissal "with leave to refile" is.  *Green v. Nw. Cmty. Hosp.*, 401 Ill. App. 3d 152, 155, 928 N.E.2d 550, 554 (1st Dist. 2010).  Which side of the line this case falls on is not clear.  Choi moved to voluntarily dismiss "with leave to refile," and he alleges the court granted this motion.  (Voluntary Dismissal at 1; Compl. ¶ 54.)  But the "agreed order" entered by the state court does not make clear whether it granted Choi's motion, nor does it include "with leave to refile" language—though it does order Choi to pay costs "before refiling."[5]  (Voluntary Dismissal at 3.)  *Compare Severino v. Freedom Woods, Inc.*, 407 Ill. App. 3d 238, 251, 941 N.E.2d 180, 191 (1st Dist. 2010) (exception applied where the order stated costs were to be paid upon refiling and the docket sheet stated leave to refile was allowed)*, with Boado*, 2012 IL App (2d) 110804, ¶ 22, 970 N.E.2d at 1218 (exception did not apply where the order was silent on refiling and the defendant moved to strike the portion of plaintiff's motion asking for leave to refile).  Given this underdeveloped issue—potentially caused by Kondaur's own litigation strategy—the court declines to dismiss based on res judicata, on the pleadings.

---

[5]     The agreed order provides that Choi must pay the third-party defendant's costs before refiling.  The heading lists PNC as the third-party defendant, while Kondaur is listed as the plaintiff.  It is not clear whether this heading properly identifies the parties, or whose costs Choi was ordered to pay.  By the time Choi moved for voluntary dismissal, the state court had already held that PNC was not a proper third-party defendant, and had granted PNC's motion to dismiss in the entirety, presumably dismissing PNC from the case.  (Compl. ¶¶ 50–51.)

Res judicata nevertheless limits the claims Choi may now bring. "The express reservation exception [to claim-splitting] applies only to those portions of the prior complaint that had not reached final judgment and the plaintiff voluntarily dismissed." *Venturella v. Dreyfuss*, 2017 IL App (1st) 160565, ¶ 30, 84 N.E.3d 386, 394–95. In this case, as stated earlier, the state court dismissed with prejudice all matters but Kondaur's alleged violation of § 1024.41 of Regulation X, for failure to timely respond to Choi's application. As far as the court can tell, this was the only matter that Choi could press at trial, and therefore the only matter he may now pursue in his refiled action, assuming an exception to claim-splitting applies. Any other matter—actually raised or not—is barred.[6]

## II.    Implied Cause of Action

Next, Kondaur argues that the Dodd-Frank Act does not provide a private right of action for § 1024.41 of Regulation X, or any other of Choi's claims. Count II is brought under RESPA's cause of action, raising violations of RESPA's statutory provisions and CFPB regulations, including § 1024.41. Count I, meanwhile, is brought under "Dodd-Frank and CFPB," and primarily alleges violations of § 1024.41. The Dodd-Frank Act contains no private cause of action for such a claim; it simply authorizes a cause of action enforcing its statutory protections for whistleblowers. *See* 15 U.S.C. § 78u-6(h)(1)(B)(i); *Regnante v. Sec. & Exch. Offs.*, 134 F. Supp. 3d 749, 760 (S.D.N.Y. 2015). Choi appears to contend that a provision of the Dodd-Frank Act granting the CFPB authority to "enforce Federal consumer financial law," *see* 12 U.S.C. § 5511, creates an implied right of action for a violation of CFPB regulations—specifically, for § 1024.41. (*See* Compl. ¶¶ 56–58; Pl.'s State Resp., Ex. F to Pls.' Resp. [12-6] (hereinafter "Pl.'s State Resp."), at 14–15.)

---

[6]    Given this conclusion, the court need not reach issue preclusion, which (as a narrower doctrine) would not impact Choi's ability to raise matters not adjudicated on the merits— that is, the alleged § 1024.41 violation, the only matter not dismissed by the state court. The court also rejects Choi's request to stay its determination of Kondaur's preclusion defense, as the Illinois Appellate Court has affirmed the trial court's judgments. *See Wilmington*, 2021 IL App (2d) 200218-U, ¶ 2.

Not every violation of a federal statute gives rises to a private right of action. *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979). Rather, Congress must create such a right. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Where a statute provides a cause of action, regulations applying that statute may be enforced the same way. *See id.* at 284. But where the statute does not expressly authorize a cause of action, an implied one exists "only if the underlying statute can be interpreted to disclose the [Congressional] intent to create one." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 164 (2008). The court concludes that the only non-barred claim— the one alleging violations of § 1024.41's timing requirements—may not be brought under an implied Dodd-Frank cause of action. Regulation X implements RESPA, and § 1024.41 specifically permits enforcement through RESPA's right of action. Congress could not have intended to permit a regulation implementing RESPA to be brought under another statute.

Even if res judicata did not bar Choi's other claims, he could not invoke the Dodd-Frank Act to enforce them. Choi has not made any argument why other potentially-relevant CFPB regulations should be enforced through that Act.[7] Dodd-Frank created the CFPB to enforce consumer protection laws, but does not itself provide a cause of action for those laws. Count I's reference to specific CFPB "rules," taken from what appears to be a guide published by the CFPB titled "Help For Struggling Borrowers," fails for an additional reason. (Compl. ¶¶ 60, 92; Ex. 4 to Def.'s Mot. to Dismiss [5-4]); *see Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (courts may consider documents attached to a motion to dismiss if they are referenced in the plaintiff's complaint and central to his claim). This CFPB guide is "non-binding," *see Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1186 (S.D. Fla. 2015), and does not create enforceable rules. Finally, to the extent Choi raises any violation of the Dodd-Frank Act's statutory

---

[7] Choi "incorporates by reference" his arguments in opposition to Kondaur's previous motion to dismiss, filed in the foreclosure action. (Pl.'s Resp. at 11.) In that brief, Choi contended that other courts "have considered" the enforcement of CFPB regulations or guidelines through the Dodd-Frank Act. (Pls.' State Resp. at 4.) But none of Choi's cited cases held that Dodd-Frank provides a private cause of action; rather, the claims in those cases arose under other statutes (such as RESPA) or state common law.

provisions—something not clear from his complaint—the court rejects this as well. *See Sims v. New Penn Fin. LLC*, No. 3:15-CV-263, 2016 WL 6610835, at \*6 (N.D. Ind. Nov. 8, 2016) (holding that Dodd-Frank did not create a cause of action against a mortgage servicer relating to the mortgage assumption process); *Regnante*, 134 F. Supp. 3d at 760–61 (collecting cases holding that Dodd-Frank has no implied cause of action, only its express whistleblower action).

In reaching this conclusion, the court rejects Choi's primary response to Kondaur's argument, that it is barred by law of the case. Law of the case "limits redetermination of rulings made earlier *in the same lawsuit*." *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1317 (7th Cir. 1995). But there are two lawsuits here: the foreclosure action in state court and the refiled suit. *See id.*; *see also Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 48, 53 N.E.3d 1, 15 (a case refiled under section 13-217 "is not a restatement of the old action, but an entirely new and separate action"). Where a party seeks to bar relitigation of an issue in a subsequent suit, issue preclusion—not law of the case—governs. *Rekhi*, 61 F.3d at 1317. Issue preclusion applies only where the specific issue was actually litigated and determined, with a final adjudication on the merits. *See Nowak*, 197 Ill. 2d at 390, 757 N.E.2d at 477. The state court's denial of Kondaur's motion to dismiss the Dodd-Frank Act/CFPB count was not a final determination on the merits. *Cf. Toushin*, 2021 IL App (1st) 192171, ¶ 77 (the denial of a motion to dismiss is "interlocutory in nature" and "can be reviewed, modified, or vacated at any time before final judgment"). But this court's ruling is. Count I is dismissed with prejudice.

## III.    Statute of Limitations

All that remains is Count II, alleging violations of RESPA. RESPA imposes a three-year statute of limitations for any action alleging violations of 12 U.S.C. § 2605, the statutory provision regulating the servicing of mortgage loans. *See* 12 U.S.C. § 2614. The allegations in Choi's complaint in this case all relate to Kondaur's servicing of Choi's loan—servicing that ended, at the very latest, on July 14, 2015, when Kondaur transferred the loan to Wilmington (a new bank). Choi refiled his suit on February 18, 2021—well after the three-year limitations period expired on

July 14, 2018. All claims raised in Count II (including those barred by res judicata) are untimely.[8] The court is not persuaded by Choi's arguments to the contrary.

### B. Illinois's Savings Statute

To defeat the timeliness challenge, Choi argues for application of the Illinois's savings statute, 735 ILCS 5/13-217 (West 1994), to his federal statute of limitations. The statute at issue, Section 13-217, permits a plaintiff who voluntarily dismisses to refile suit once, within the greater of one year or the limitations period, so long as the refiled suit is not barred by res judicata. *See Hudson*, 228 Ill. 2d at 482, 889 N.E.2d at 222; *Timberlake v. Illini Hosp.*, 175 Ill. 2d 159, 163, 676 N.E.2d 634, 636 (1997). This tolling provision is "part and parcel" of Illinois's statute of limitations scheme. *Klancir v. BNSF Ry. Co.*, 2015 IL App (1st) 143437, ¶ 16, 40 N.E.3d 438, 443 (quoting *Evans v. Lederle Lab'ys, a Div. of Am. Cyanamid Co.*, 904 F. Supp. 857, 859 (C.D. Ill. 1995)). In federal court, it does not operate to open the door to an otherwise-time-barred claim, except in two situations: where the federal statute lacks an express statute of limitations and therefore "borrows" from state law, *see Gosnell v. City of Troy*, 59 F.3d 654, 656 (7th Cir. 1995), or where the federal court sits in diversity, adjudicating a state law claim, *see Conover v. Lein*, 87 F.3d 905, 907 (7th Cir. 1996).

Neither situation applies here. RESPA is a federal statute, with an express statute of limitations. Where a federal statute provides the statute of limitations, courts—both federal and state—apply that limitations period. *See Berger v. AXA Network LLC*, 459 F.3d 804, 808 (7th Cir.

---

[8]    Moreover, if Count I were theoretically viable, it too would be barred by RESPA's three-year statute of limitations. As Kondaur contends (and Choi does not challenge), this limitations period applies to both of Choi's counts. Dodd-Frank, as noted, does not authorize a private right of action in this context and, not surprisingly, provides no limitations period for Choi's claims. When a federal statute lacks a limitations period, courts may apply another federal statute of limitations where there is one that "clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Reed v. United Transp. Union*, 488 U.S. 319, 324 (1989) (citation omitted). Choi's Dodd-Frank count alleges unlawful conduct by his mortgage servicer—conduct directly governed by RESPA and its three-year limitations period.

2006) (federal courts borrow statute of limitations when "Congress fails to provide a statute of limitations for a federal claim"); *Wellington Homes, Inc. v. W. Dundee China Palace Rest., Inc.*, 2013 IL App (2d) 120740, ¶ 24, 984 N.E.2d 554, 562 ("Illinois state courts routinely enforce federal limitations periods when hearing federal causes of action under statutes that contain time limitations."). The Seventh Circuit has therefore concluded, on multiple occasions, that Section 13-217 does not apply to a federal claim governed by a federal statute of limitations. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *Beck v. Caterpillar Inc.*, 50 F.3d 405, 406–07 (7th Cir. 1995); *accord Frazier v. U.S. Bank Nat'l Ass'n*, No. 11 C 8775, 2013 WL 1337263, at *5 (N.D. Ill. Mar. 29, 2013).

Choi attempts to distinguish this precedent on the basis that his case was originally filed and then refiled in Illinois state court—unlike those Seventh Circuit cases, which Choi reads as resting on the fact that plaintiff dismissed in federal court, under federal procedural rules. That matters, according to Choi, because federal law treats a voluntarily-dismissed suit as though it had never been filed for tolling purposes (presumably meaning the non-existent suit cannot be "saved" by Illinois's savings statute)—but Sections 2-1009 and 13-217 permit refiling of voluntarily dismissed suits, and Lake County local rules treat a refiled suit as a continuation of the original action. Choi's interpretation of *Nelson* and *Beck* is incorrect. In both cases, the Seventh Circuit explained that Section 13-217 did not (or would not) save an untimely federal claim governed by a federal statute of limitations, and discussed federal procedural rules in reaching the final disposition. *See Nelson*, 657 F.3d at 590–91 (affirming the district court's denial of a Rule 60(b) motion to reinstate an untimely case dismissed under Rule 41(a), because counsel's mistaken belief that federal reinstatement operated like Section 13-217 was not excusable neglect); *Beck*, 50 F.3d at 407–08 (holding plaintiff's claim time-barred, because dismissal under Rule 41(a) did not toll the federal statute of limitations and Section 13-217 did not apply).

Though Choi provides no supporting caselaw, he also seems to suggest some type of inverted preclusion argument: because an Illinois court would permit Choi's refiling, this court

should as well. *See Carr v. Tillery*, 591 F.3d 909, 914 (7th Cir. 2010) (explaining that a federal court must bar refiling if a state court would, because state court judgments are owed full faith and credit). Whatever the merits of this argument, it does not apply here: several Illinois courts have held that Section 13-217 only tolls limitation periods set by Illinois law, not by federal law. *See Klancir*, 2015 IL App (1st) 143437, ¶ 16, 40 N.E.3d at 443; *Picciotto v. RGB Riverboat*, 323 Ill. App. 3d 708, 709–710, 754 N.E.2d 400, 401 (2d. Dist. 2001). Choi's observation that his case was removed to federal court (rather than originally filed here) is similarly immaterial; an express federal statute of limitations follows a federal claim, whether in Illinois or federal court. Choi cannot use Section 13-217 to toll RESPA's statute of limitations.

### C. Equitable Tolling

Next, Choi argues that equitable tolling prevents application of the statute of limitations. To establish equitable tolling, the plaintiff must show (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Lee v. Cook Cty.*, 635 F.3d 969, 972 (7th Cir. 2011). Choi points to Kondaur's conduct in the foreclosure action, arguing that Kondaur "persistently and contumaciously avoided a resolution of Choi's counterclaim" by ignoring discovery obligations and court orders, taking "advantage of Choi's *pro se* status," and pressing for in-person depositions once Choi's health worsened. (Pls.' Mem. at 8–9.) Choi also notes that before the scheduled March 2020 trial, his health was deteriorating (he does not specify his health problem), and the country was on the "verge" of lockdown due to COVID-19. (*Id.* at 6.) These circumstances, Choi suggests, support the decision to voluntarily dismiss on February 14, 2020 and should give rise to equitable tolling. (Voluntary Dismissal at 1.)

Even if Choi is correct about the wisdom of voluntary dismissal in February 2020, the doctrine of equitable tolling will not revive claims that were initially timely filed, and then refiled after the time for filing has expired. For example, in *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000) (a case not cited by the parties), the district court dismissed plaintiff's timely-filed

employment discrimination case without prejudice. The district judge should have severed plaintiffs' case rather than dismissing it; but the court was correct in dismissing plaintiff's case as untimely when he later re-filed on a date that was well past the statute of limitations. Nor could plaintiff avail himself of the doctrine of equitable tolling:

> [This] is not a case in which the plaintiff was prevented from suing within the limitations period. He did sue within that period. His complaint is that his suit was erroneously dismissed, as a result of which, though the dismissal was without prejudice, his claim was lost because the statute of limitations ran before he refiled. Equitable tolling is not a remedy for an erroneous judgment; appeal . . . is.

*Id.* at 1013; *accord Boyd v. Jacobs Project Mgmt. Co.*, 740 F. App'x 99, 101 (7th Cir. 2018). Here, too, Choi was not prevented from timely filing. Choi's real argument is that, due to Kondaur's actions and his own health, he was somehow forced to voluntarily dismiss, rendering his refiled suit untimely.

But Choi was free to seek redress for his concerns in the original state court action. Although he has offered no specifics, the court will assume that Choi's health, in addition to the pandemic, meant he was unable to proceed to trial. He could have asked the state court for a continuance on this ground. He offers no basis for an assumption that such a request would have been denied; and if it had been, Choi could have appealed from any unfavorable decision after trial. *See* 735 ILCS 5/2-1007. And, assuming the truth of Choi's numerous complaints about Kondaur's abusive litigation tactics, he could have sought intervention and redress for these wrongs from the state court, as well. Voluntary dismissal, without consequences, is not the appropriate remedy for an opposing party's litigation misconduct. Choi's apparent belief that the Illinois savings statute would apply to his refiled federal claims was mistaken. Such a belief does not establish equitable tolling. *See Lee*, 635 F.3d at 973.

### D. Continuing Violation

Finally, Choi points to the continuing violation doctrine. According to Choi, Kondaur's violations caused fees to be added to modified loan balance and the loan repayments to increase, meaning a continuing violation occurs each time Choi makes an inflated loan payment. A

continuing violation occurs in three situations: first, where the violation is genuinely continuing, meaning that there are ongoing discrete violations and the latest limitations period runs from the date of the last violation (prototypically, the ongoing failure to treat a prisoner's medical condition); second, a genuine "cumulative violation," which delays the limitations period until a series of minor acts blossoms into an actionable injury (prototypically, a hostile work environment claim); and third, a lingering or continuing injury from a completed violation, which is not covered by the doctrine and does not toll the statute of limitations. *See United States v. Midwest Generation, LLC*, 720 F.3d 644, 646–47 (7th Cir. 2013); *Turley v. Rednour*, 729 F.3d 645, 654 (7th Cir. 2013) (Easterbrook, J., concurring).

Choi's claim clearly falls into the third category. The only non-barred claim is a distinct and completed violation of § 1024.41, which occurred when Kondaur allegedly failed to respond to Choi's loss mitigation application within the required time. His other claims also allege distinct instances of Kondaur's improper conduct with respect to loan servicing. Because these violations were immediately actionable (or, at the latest, actionable when Kondaur sold the loan in July 2015), Choi has not alleged a genuine cumulative violation. *See Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008) (the doctrine applies where the defendant's conduct is initially "too trivial" to be actionable). Nor has Choi alleged a genuine continuing violation, even if the violations could be characterized as "ongoing" the entire time that Kondaur owned the loan. Kondaur's involvement in that violation ended (and the limitations period began) as soon as it sold the loan. *Cf. Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517–18 (7th Cir. 2019) (where a defendant's denial of medical treatment to a prisoner is "continuing," the limitations period begins to run once defendant leaves the prison). The fact that Choi continues to feel the lingering effects of this years-old violation does not extend his limitations period.

In an underdeveloped argument, Choi notes that the continuing violation doctrine applies "when the state actor has a policy or practice that brings with it a fresh violation each day." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). He then points to cases on the paycheck accrual

rule, which holds that "a new cause of action for pay discrimination [arises] every time a plaintiff receive[s] a paycheck resulting from an earlier discriminatory compensation practice occurring outside the statute of limitations period." *Groesch v. City of Springfield*, 635 F.3d 1020, 1027 (7th Cir. 2011); (*see* Pl.'s Mem. at 10.) As best this court can tell, Choi contends that Kondaur had a practice of unlawful mortgage servicing, and Choi's own current loan payments are fresh reflections of that practice. This analogy to the paycheck accrual rule is misplaced. In *Ledbetter v. Goodyear Tire & Rubber Co.,* 550 U.S. 618, 633–37 (2007), the Supreme Court rejected the paycheck accrual rule. Though Congress responded by amending the statute of limitations for paycheck discrimination claims, *see Groesch*, 635 F.3d at 1024–25, that amendment to a different cause of action does not help Choi. After *Ledbetter*, the "enduring consequences of acts that precede the statute of limitations are not independently wrongful." *Midwest Generation*, 720 F.3d at 648.

To the extent Choi makes some other practice or pattern argument (for instance, that Kondaur's actions culminated into a pattern within the limitations period), the court is not persuaded. Besides a conclusory allegation that Kondaur had a "pattern and practice of noncompliance," the complaint's factual allegations relate solely to Choi's own mortgage loan and say nothing about a purported general pattern and practice with respect to loan servicing. In any event, Choi must have known of any alleged pattern or practice by the time Kondaur sold that loan. *Cf. Limestone*, 520 F.3d at 802 (holding plaintiff's RICO claim time-barred where the "pattern of trying to force out [plaintiff] without having to pay the fair market value of its property was well established" before the limitations period). Counts I and II are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant Kondaur's motion [4] is granted. The court also rejects Plaintiff Choi's request to remand this case to state court. Choi provides no reason for remand, and this court sees none: the court has federal question jurisdiction, because Choi's

alleged violations of RESPA and Dodd-Frank arise under federal law. *See* 28 U.S.C. § 1331. The court dismisses Plaintiff Choi's complaint with prejudice and without leave to amend.

ENTER:

Dated: March 22, 2022

_____
REBECCA R. PALLMEYER
United States District Judge